1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA
10

11   GUY HART,                          Case No. 2:22-cv-03399-FLA (MRWx)

12                     Plaintiff,

13            v.                        **ORDER: (1) GRANTING
                                        DEFENDANT SELECT PORTFOLIO
14                                      SERVICING, INC.'S MOTION FOR
                                        SUMMARY JUDGMENT [DKT. 66];
15   SELECT PORTFOLIO SERVICING,        (2) DENYING PLAINTIFF'S
     INC., et al.,                      REQUEST FOR LEAVE TO AMEND
16                                      HIS CLAIMS AGAINST
                      Defendants.       DEFENDANT BANK OF AMERICA,
17                                      N.A. [DKT 85]; (3) DENYING AS
                                        MOOT DEFENDANT BANK OF
18                                      AMERICA, N.A.'S MOTION FOR
                                        SUMMARY JUDGMENT [DKT. 63];
19                                      (4) DENYING AS MOOT
                                        DEFENDANT SELECT PORTFOLIO
20                                      SERVICING, INC.'S MOTION TO
                                        DISMISS [DKT. 16]; AND (5)
21                                      DISCHARGING THE COURT'S
                                        ORDER TO SHOW CAUSE WHY
22                                      THE COURT SHOULD NOT ISSUE
                                        A PRELIMINARY INJUNCTION
23                                      [DKT. 50]**
24
25
26
27
28

1

1

## **RULING**

2
Defendant Select Portfolio Servicing, Inc.'s ("SPS") Motion for Summary

3
Judgment ("SPS MSJ," Dkt. 66) and Defendant Bank of America, N.A.'s ("BANA")

4
Motion for Summary Judgment ("BANA MSJ," Dkt. 63) came to hearing on July 21,

5
2023.  Dkt. 88.  Plaintiff Guy Hart ("Plaintiff" or "Hart") opposes both motions.  Dkt.

6
74-1 ("Opp'n to SPS MSJ"); Dkt. 75-1 ("Opp'n to BANA MSJ").  At the hearing, the

7
court also heard argument regarding whether the court should grant Plaintiff leave to

8
amend his remaining claims against BANA (Dkt. 85).

9
For the reasons stated herein, the court GRANTS SPS' Motion for Summary

10
Judgment (Dkt. 66) in its entirety and DENIES Plaintiff leave to amend his claims

11
against BANA (Dkts. 15, 85).  BANA's Motion for Summary Judgment (Dkt. 63) and

12
SPS' Motion to Dismiss (Dkt. 16) are DENIED without prejudice as moot.  The

13
court's February 17, 2023 order to show cause ("OSC," Dkt. 50) is DISCHARGED.

14

## **BACKGROUND**

15
Plaintiff alleges he is the current owner of the real property located at 2930

16
Neilson Way #306, Santa Monica, CA 90405 (the "Property").  Dkt. 13 ("FAC") ¶ 1.

17
In 2004, Plaintiff obtained through BANA a first position loan in the amount of

18
$367,700 (the "First Loan"), which was secured by the Property.  Dkt. 68 ("SPS

19
SUF") ¶ 21; Dkt. 74 ("Pl. SGDF") ¶ 21.[1]

20
Or around July 15, 2004, Plaintiff obtained an equity line of credit from BANA

21
with a credit limit of up to $135,000 (the "Second Loan"), which was evidenced by an

22
Equity Maximizer Agreement and Disclosure Statement (the "Equity Maximizer

23
Agreement").  SPS SUF ¶ 22; Pl. SGDF ¶ 22.  To secure the Equity Maximizer

24
Agreement, Plaintiff executed and delivered to BANA a Short Form Deed of Trust

25

26
[1] Plaintiff's separate statements do not comply with the court's Initial Standing Order

27
(Dkt. 8 at 9–10) or Local Rule 56-3.  The court expects the parties to comply fully
with all statutory requirements, court rules, and court orders, and the parties are

28
advised that failure to so comply may result in sanctions.

1   ("Deed of Trust"), encumbering the Property.  SPS SUF ¶ 23; Pl. SGDF ¶ 23.  The

2   Deed of Trust identifies the Property as:

3       (A) AN UNDIVIDED 1/144TH PERCENT INTEREST IN AND
4       TO LOT 2 OF TRACT NO 34110, IN THE CITY OF SANTA
        MONICA, COUNTY OF LOS ANGELES, STATE OF
5       CALIFORNIA, AS PER MAP RECORDED IN BOOK 908,
6       PAGE(S) 85 TO 87 INCLUSIVE OF MAPS, IN THE OFFICE OF
        THE COUNTY RECORDER OF SAID COUNTY (B) UNIT 68 AS
7       SHOWN AND DEFINED ON SAID CONDOMINIUM PLAN

8   Dkt. 66-10 (Simon Decl. Ex. 2) at 22.[2]

9           On or around August 26, 2005, Plaintiff executed an agreement with BANA

10  titled "Equity Maximizer – Home Secured Lines of Credit [¶] Credit Limit Increase

11  Agreement" (the "Credit Limit Increase Agreement"), which increased the credit limit

12  on the Second Loan to a total of $241,000.  FAC ¶¶ 11–12; Dkt. 66-10 (Simon Decl.

13  Ex. 3) at 25–28.  Plaintiff also executed an agreement with BANA titled

14  "Modification of Deed of Trust – Modification Agreement" (the "Deed of Trust

15  Modification"), amending the Deed of Trust to provide for a total credit commitment

16  of $241,000, secured by the Property.  Dkt. 66-10 (Simon Decl. Ex. 4) at 30–35.  The

17  Deed of Trust Modification identifies the secured property by the same legal

18  description as stated in the Deed of Trust.  *See id.* at 35.[3]  The Second Loan went into

19  default in 2012.  SPS SUF ¶ 16.

20  _____

21  [2] The court cites documents by the page numbers added by the CM/ECF system rather
22  than any page numbers listed on the documents natively.

23  [3] Plaintiff contends the Credit Limit Increase Agreement and Deed of Trust
    Modification are not enforceable against the Property, as they identify the secured
24  property by the incorrect street address: "2930 Nielson Way #30, Chatsworth, CA
25  90405."  FAC ¶ 11; Opp'n to SPS MSJ at 4.  The court disagrees.  As the Deed of
    Trust and Deed of Trust Modification identify the secured property by the same legal
26  description, errors in the street address listed do not render these documents void or
27  affect the validity of Plaintiff's conveyance to BANA of an interest in the Property.
    *See* Cal. Code Civ. Proc. § 2077; *Leonard v. Osburn*, 169 Cal. 157, 160 (1915) ("A

28

3

In 2016, Plaintiff obtained a modification of the First Loan from non-party Caliber Home Loans, Inc. ("Caliber"), which was the servicer of that loan. SPS SUF ¶ 47; Pl. SGDF ¶ 47; Dkt. 53-1 (Hart Decl. Ex. A) at 4–10. Plaintiff contends this modification included or should have included a modification of, extinguishment of, or combination with the Second Loan. FAC ¶ 14; Opp'n to SPS MSJ at 21.

On April 25, 2017, Plaintiff sent a letter to BANA titled: "OFFICIAL DISPUTE of alleged debt and alleged default." Dkt. 66-5 (Betpera Decl. Ex. 6) at 7; SPS SUF ¶ 51. Plaintiff's letter states he received telephone calls in 2017 from BANA concerning an alleged debt, the validity of which he disputed. Dkt. 66-5 (Betpera Decl. Ex. 6) at 8.

Effective May 1, 2019, BANA transferred the servicing of the Second Loan to SPS, and SPS began servicing the Second Loan on that date. SPS SUF ¶¶ 31, 49; Pl. SGDF ¶¶ 31, 49. Plaintiff became aware SPS was attempting to service the Second Loan by July 2019 at the latest. SPS SUF ¶ 50; Pl. SGDF ¶ 50.

On April 22, 2022, Plaintiff filed the Complaint in the Los Angeles County Superior Court, asserting six causes of action against Defendants BANA and SPS. Dkt. 1-1 ("Compl."). SPS removed the action to this court on May 19, 2022. Dkt. 1. On June 16, 2022, Plaintiff filed the FAC in this court, asserting four causes of action for: (1) violation of the Real Estate Settlement Procedures Act ("RESPA," 12 U.S.C. § 2605), against SPS; (2) violation of the Fair Debt Collection Practices Act (the "FDCPA," 15 U.S.C. §§ 1692–1692p), against BANA and SPS; (3) negligent misrepresentation against BANA and SPS; and (4) unfair business practices in violation of California's Unfair Competition Law (the "UCL," Cal. Bus. & Prof. Code § 17200, et seq.), against BANA and SPS. FAC at 20–27.

/ / /

_____

deed is not void for uncertainty because of errors or inconsistency in some of the particulars of the description" and "will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed.").

1        According to Plaintiff, BANA entered into a settlement agreement with the

2   federal government in 2014, regarding its role in bringing about the 2008 housing and

3   economic crises.  FAC ¶ 14.  Plaintiff appears to be referring to the entry of judgment

4   BANA consented to with the United States Department of Justice ("DOJ") in the

5   action styled *United States of America v. Bank of America Corp.*, Case No. 1:12-cv-

6   00361-RMC (D.D.C. Apr. 4, 2012) (the "Consent Judgment").[4]  Plaintiff further

7   alleges that "[f]ollowing the implementation of the Settlement terms, Plaintiff

8   ultimately obtained modification in or around 2016 that resulted in a modified first

9   loan, inclusive or should have included the modification, extinguishment or

10   combination of both for the Second Lien."  *Id.* (grammar errors in original).

11        On July 19, 2023, the court granted BANA's Motion to Dismiss ("BANA

12   MTD," Dkt. 15) without leave to amend as to the second cause of action, and with the

13   question of leave to amend for Plaintiff's remaining claims against BANA to be

14   discussed at the upcoming hearing on Defendants' MSJs.  Dkt. 85 at 2, 7.

15   **SPS' MOTION FOR SUMMARY JUDGMENT**

16   **I.   Legal Standard**

17        Summary judgment is appropriate where "there is no genuine dispute as to any

18   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

19   P. 56(a).  "The substantive law determines which facts are material; only disputes over

20   facts that might affect the outcome of the suit under the governing law properly

21   preclude the entry of summary judgment."  *Nat'l Ass'n of Optometrists & Opticians v.*

22   *Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*,

23   477 U.S. 242, 248 (1986)).  A dispute about a material fact is "genuine" if the

24   evidence is such that a reasonable jury could return a verdict for the nonmoving party.

25   *Anderson*, 477 U.S. at 248.

26   

27   [4] The court GRANTS SPS' request to notice judicially the Consent Judgment (Dkt.
67), and takes judicial notice of the existence and legal effect of this document.  *See*

28   Fed. R. Evid. 201.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49. A party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law. *Id.* The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id.* at 630–31.

## II.   Analysis

### A.   Second Cause of Action for Violation of the FDCPA

The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," including by: (1) making false representations of "the character, amount, or legal status of any debt, (2) threatening "to take any action that cannot legally be taken or

that is not intended to be taken," and (3) using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A), (5), (10).  The FDCPA further prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.*, § 1692f(1).  The FAC alleges SPS violated the FDCPA by collecting on a debt that was not owed and could not be legally demanded.  FAC ¶ 100.

SPS moves for summary judgment on Plaintiff's FDCPA claim on the grounds that Plaintiff lacks evidence sufficient to establish that the Second Loan was extinguished or forgiven, as he contends.  SPS MSJ at 18.  Plaintiff contends the Second Loan is no longer owed and cannot be legally demanded because he "was informed by Bank of America's employee from the Office of the President, Holly Graham ["Ms. Graham"], that the loan was extinguished by [BANA's] 2014 Settlement" with the DOJ.  Opp'n to SPS MSJ at 21–22.

In California, contracts subject to the statute of frauds are invalid, "unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or the party's agent."  Cal. Civ. Code § 1624(a).  As a debt secured by real property, the Second Loan was subject to the statute of frauds.  *See id.* §§ 1624(a)(3) (an agreement "for the sale of real property, or of an interest therein" is subject to the statute of frauds), 2922 ("A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property.").  Furthermore, as the Second Loan was subject to the statute of frauds, any agreement to modify or extinguish the Second Loan would also be subject to the statute of frauds.  *See Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2*, 167 Cal. App. 4th 544, 553 (2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds."); Cal. Civ. Code § 1698(c) ("Unless the contract otherwise expressly provides, a contract in writing may be modified by an

oral agreement supported by new consideration.  The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.").

It is undisputed that Plaintiff does not have any written evidence subscribed by Defendants that supports his contention that the Second Loan was modified, forgiven, or extinguished in 2016.  SPS SUF ¶ 20; *see* Pl. SGDF ¶ 20.  Plaintiff's argument, thus, fails as any agreement by BANA to forgive, modify, or extinguish the Second Loan would be invalid pursuant to the statute of frauds.

Plaintiff raises two primary arguments against the application of the statute of frauds here.  First, Plaintiff contends, without supporting legal authority, that extinguishment of a loan differs from a modification and need not be evidenced by a writing.  Opp'n to SPS MSJ at 22.  The court disagrees.  A lender's agreement to extinguish or forgive a loan secured by real property changes the rights and obligations of the parties and, thus, constitutes a modification of the loan agreement that must be supported by consideration and a writing to be enforceable.  *See* Cal. Civ. Code § 1698(c); *see also Secrest*, 167 Cal. App. 4th at 553 (holding a forbearance agreement that altered the lender's ability to exercise a right to foreclose under a note and deed of trust was subject to the statute of frauds).  Plaintiff's first argument, thus, fails.

Second, Plaintiff argues SPS is barred from asserting the statute of frauds based on the doctrine of promissory estoppel.  Opp'n to SPS MSJ at 22 (citing *Sessions v. Southern California Edison Co.*, 47 Cal. App. 2d 611 (1941) (no pincite provided)).  "To estop a defendant from asserting the statute of frauds, a plaintiff must show unconscionable injury or unjust enrichment if the promise is not enforced."  *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 944 (2014).[5]  "'The doctrine of estoppel has

---

[5] "California has adopted the Restatement Second of Contracts doctrine of promissory estoppel: 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee … and which does induce such action or

been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute." *Id.* (quotation marks omitted); *see also Contreras v. Loya*, 192 Cal. App. 2d 176, 178 (1961) ("[Estoppel] applies only where the party seeking to enforce the oral contract has so altered his position, in reliance on the contract, as to incur unjust and unconscionable injury which cannot be compensated for in damages.").

"The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Id.* at 945 (quotation marks and brackets omitted). Courts are given wide discretion in applying the doctrine of promissory estoppel. *Id.*

Plaintiff contends he "relied on Defendant BANA's promise that the lien was extinguished to his detriment by not taking any further actions in regards to the loan based on BANA's representations that the loan was extinguished which, unbeknownst to Plaintiff, resulted in interest compounding on the loan." Opp'n to SPS MSJ at 22. Plaintiff, thus, argues SPS should be barred from asserting the statute of frauds to prevent him from benefiting from BANA's alleged agreement to forgive or extinguish the Second Loan. *Id.* The court disagrees.

The undisputed evidence in the record shows that Plaintiff became aware that BANA was attempting to enforce and collect on the Second Loan by April 25, 2017, at the latest, when he sent BANA a letter disputing the validity of the Second Loan.

---

forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Jones*, 230 Cal. App. 4th at 944 (quoting Restatement (Second) of Contracts § 90 (Am. L. Inst. 1981)).

Dkt. 66-5 (Betpera Decl. Ex. 6) at 8.[6]  Plaintiff, therefore, could have only reasonably relied on BANA's alleged representations that the Second Loan was extinguished or forgiven between July 20, 2016, when Caliber executed the modification of the First Loan (Dkt. 53-1 at 9), and April 25, 2017—which was only a 9-month period.  It is also undisputed that the Second Loan had been in default since 2012.  SPS SUF ¶ 16.

The fact that additional interest accrued on the Second Loan after Plaintiff was allegedly told the loan was forgiven or extinguished is insufficient to establish "unconscionable injury or unjust enrichment if the promise is not enforced"— especially considering that the Second Loan had been in default for approximately 4 years by the time of BANA's alleged representation.  *See Jones*, 23 Cal. App. 4th at 944.  At most, the alleged statement by BANA would only equitably estop Defendants from seeking to collect on the interest that accrued during the 9-month period while Plaintiff believed the loan was forgiven—not the entire loan.  To the contrary, Plaintiff would be unjustly enriched if the court were to invalidate the Second Loan in its entirety, simply because additional interest accrued on a loan that had already been in default for approximately four years.  Plaintiff, thus, fails to demonstrate that SPS should be estopped from asserting the statute of frauds on this basis.

At the hearing, Plaintiff additionally argued that SPS should be estopped from asserting the statute of frauds because he did not seek to refinance the Second Loan or a loan modification, at a time when interest rates were at 2%, in reliance of BANA's alleged representation that the Second Loan had been forgiven or extinguished.

---

[6] Plaintiff argues "[t]he April 25, 2017 letter disputes that BANA [owns] any debt and never references the second loan."  Dkt. 74 (Pl. SGDF) ¶ 51.  The letter, however, lists the account number for the Second Loan in the "Regarding" line on the first page. Dkt. 66-5 (Betpera Decl. Ex. 6) at 7.  Plaintiff also acknowledges that the debt disputed in the letter is different from the debt that was the subject of his loan modification with Caliber.  *See id.* at 8.  Thus, even when viewed in the light most favorable to Plaintiff, the evidence in the record demonstrates clearly that Plaintiff was or should have been aware that the debt at issue arose from the Second Loan.

1  Plaintiff did not identify this as grounds for detrimental reliance in his opposition

2  brief, his declaration, or at deposition, and this argument is not supported by the

3  evidence in the record.  *See* Opp'n to SPS MSJ at 22; Dkt. 74-4 (Hart Decl.); Dkt. 66-

4  2 (Betpera Decl. Ex. G, Hart Dep. pt. 2) at 33–34 (Q. Do you have, as you sit here

5  today, a recollection of taking any sort of actions in reliance on Ms. [Graham]'s

6  alleged statements that your loan had been resolved?  A. Other than having a relief -- a

7  temporary relief, because obviously it came back in 2019.  Other than that, no. … As

8  I sit here today, I cannot think of anything else.  There may be, if I had more time to

9  think about it a little bit.  As I sit here today, I cannot think of anything else right

10  now.").

       Furthermore, Plaintiff's contention that he could have refinanced or obtained a

11

12  loan modification of the Second Loan is entirely speculative, and the court notes

13  Plaintiff does not present any evidence demonstrating he sought or applied for either

14  during the approximately four years the Second Loan was in default before BANA's

15  alleged representation.  This argument is insufficient to establish that Plaintiff

16  justifiably relied on the alleged misrepresentation or that Plaintiff would suffer

17  unconscionable injury or SPS unjustly enriched if the alleged promise is not enforced.

18  *See Taylor*, 880 F.2d at 1045; *Jones*, 230 Cal. App. 4th at 935.  The court will not

19  estop SPS from asserting the statute of frauds on this basis.

20        In sum, SPS establishes the Second Loan was subject to the statute of frauds

21  and that Plaintiff lacks evidence of a writing sufficient to establish that the Second

22  Loan was forgiven, modified, or extinguished.  Plaintiff, in turn, fails to establish

23  grounds to prevent Defendants from asserting the statute of frauds.[7]  The court,

24  _____

25  [7] Plaintiff argues that the extinguishment of the Second Loan is evidenced by BANA's
    failure to send regular account statements to a valid address beginning in
26  approximately 2014, and the fact that the Second Loan disappeared from Plaintiff's
    credit reports.  Opp'n to SPS MSJ at 5, 22.  Plaintiff does not cite any legal authority
27  to establish that a lender or servicer's failure to send statements to a valid address

28

therefore, finds there is no genuine dispute that the Second Loan was not forgiven, modified, or extinguished and that SPS did not violate the FDCPA by attempting to collect on the Second Loan and to foreclose the Property.   For the sake of completeness, the court will address two additional arguments raised by Plaintiff during this litigation regarding the validity of the Second Loan.

First, Plaintiff argued in the FAC that the Second Loan was or should have been extinguished under the Home Affordable Modification Program ("HAMP") Second Lien Modification Program ("2MP").  FAC ¶¶ 101–03.  SPS states 2MP "is a program within HAMP which creates a process to modify or extinguish qualifying second position liens where there has been an eligible HAMP first lien modification on the same property."  SPS MSJ at 19.  According to SPS, for a second lien to be eligible for a 2MP modification, "(1) the first lien must have been modified under HAMP, (2) the HAMP modification under the first lien must be in good standing, (3) the second lien must have been obtained on or before January 1, 2009, (4) the second lien must be in good standing, (5) the principal balance of the second lien must be at least $5,000, and (6) the borrower must not be a convicted felon."  *Id.* (citing 12 U.S.C. §§ 5219, et seq.).  Plaintiff does not dispute SPS' statements regarding the requirements for modification or extinguishment of a loan under 2MP.  *See* Opp'n to SPS MSJ.

---

constitutes grounds for the extinguishment of a loan or otherwise establishes grounds to prevent the lender from collecting on the loan.  To the contrary, the Equity Maximizer Agreement states specifically: "**Delay in Enforcement.**  We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right."  Dkt. 66-10 (Simon Decl. Ex. 1) at 15 (emphasis in original).  Furthermore, BANA's mailing of account statements to the address in question, beginning in or around 2014, cannot evidence the forgiveness or extinguishment of the Second Loan two years later in 2016.  With regard to Plaintiff's credit reports, Plaintiff does not present any evidence to establish Defendants ever informed credit agencies that the Second Loan had been discharged or was no longer valid, or otherwise had control over whether the Second Loan appeared on his credit reports.  Plaintiff, thus, fails to demonstrate the existence of a genuine dispute of material fact based on these arguments.

1    SPS contends the Second Loan was not eligible for 2MP modification or

2   extinguishment because: (1) Plaintiff does not provide evidence he applied for loan

3   assistance under HAMP or 2MP, (2) the First Loan was not in good standing, and (3)

4   the Second Loan had been in default since 2012.  SPS MSJ at 19.  Plaintiff does not

5   respond substantively to SPS' arguments, and states only that "whether or not the loan

6   was eligible for modification under the HAMP 2MP Program … is irrelevant[.]"

7   Opp'n to SPS MSJ at 22.  Plaintiff, thus, appears to concede the Second Loan was not

8   subject to 2MP modification, and the court finds the Second Loan was not forgiven,

9   modified, or extinguished under this program.

10    Second, Plaintiff argued BANA discharged or should have discharged the

11   Second Loan under the Consent Judgment.  FAC ¶¶ 13–14; Opp'n to SPS MSJ at 5–6,

12   21.  SPS contends the Second Loan was not eligible for modification under the

13   Consent Judgment for reasons including: (1) the First and Second Loans were

14   serviced by different entities and the servicer of the Second Loan, BANA, did not

15   complete a successful proprietary first lien modification, (2) the modification of the

16   First Loan was not a proprietary modification as required, but a modification under

17   HAMP, (3) the Consent Judgment expired in 2015—before Plaintiff obtained

18   modification of the First Loan in 2016, and (4) Plaintiff lacks standing to enforce the

19   Consent Judgment.  SPS MSJ at 21–22 (citing Dkt. 67 at 172–73 (Consent Judgment

20   Ex. D, § 2(c)(i)(2)); SPS SUF ¶¶ 45–48.  Plaintiff does not respond substantively to

21   SPS' arguments or dispute that the Consent Judgment expired before he obtained a

22   modification of the First Loan, Pl. SGDF ¶ 47, and argues only that "whether or not

23   the [Second Loan] was eligible for modification under ... the consent order is

24   irrelevant[.]"  Opp'n to SPS MSJ at 22.  The court, therefore, finds the Second Loan

25   was not forgiven, modified, or extinguished by the Consent Judgment.

26    As discussed, Plaintiff lacks evidence sufficient to establish that the Second

27   Loan was forgiven, modified, or extinguished and cannot establish that SPS violated

28   the FDCPA by attempting to collect on the Second Loan or foreclose the Property.

The court, therefore, GRANTS summary judgment in SPS' favor on the second cause of action.

## B. First Cause of Action for Violation of RESPA

RESPA requires servicers of federally related mortgage loans to respond to Qualified Written Requests ("QWRs") from borrowers "for information relating to the servicing of such loan[s]," and take action with respect to the inquiry within 30 days. 12 U.S.C. § 2605(e)(1), (2). For purposes of RESPA:

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B). A servicer's statutory duty to respond under this section "does not arise with respect to *all* inquiries or complaints from borrowers to servicers," and requires the servicer to act only on QWRs for information relating to the "servicing" of the loan. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (emphasis in original).

"RESPA defines the term 'servicing' to encompass only 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts …, and making the payments of principal and interest and such other payments.'" *Id.* (citing 12 U.S.C. § 2605(i)(3)). "'Servicing,' so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Id.* at 666–67. "Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors," and are not included within the scope of the

statute.  *Id.* at 667 (emphasis in original).

The FAC alleges SPS failed to respond to requests for information and documents Plaintiff made between July 2019 and April 2022.  FAC ¶¶ 87, 91.  In his responses to SPS' interrogatories, Plaintiff states the requests at issue were sent to SPS on February 11, 2021, April 3, 2021, April 7, 2021, May 20, 2021, December 8, 2021, March 8, 2022, and April 13, 2022.  Dkt. 66-1 (Betpera Decl. Ex. B) at 20; SPS SUF ¶ 2 (erroneously identifying the date of the final request as April 13, 2023); Pl. SGDF ¶ 2.

SPS moves for summary judgment on Plaintiffs' RESPA claim on the grounds that Plaintiff's requests do not constitute QWRs relating to the servicing of a loan. SPS MSJ at 15–16.  According to SPS, Plaintiff's identified requests did not identify any servicing errors by SPS and, instead, disputed the validity of the Second Loan and sought information regarding Plaintiff's requests for loan modifications.  *Id.*  Plaintiff responds that his requests asserted servicing errors related to: (1) SPS' attempts to foreclose the Property during the COVID-19 pandemic and while it was investigating Plaintiff's allegations that the loan had been extinguished, and (2) the mishandling of Plaintiff's loan modification applications.  Opp'n to SPS MSJ at 19–20.  The court disagrees with Plaintiff's contention that his requests involved "servicing" errors under RESPA.

RESPA "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other."  *Medrano*, 704 F.3d at 667.  Plaintiff's requests to SPS did not identify any errors by SPS related to its receipt of scheduled periodic payments from Plaintiff or the "payments of principal and interest and such other payments with respect to the amounts received" it made to the lender, BANA. *See* 12 U.S.C. § 2605(i)(3).  Plaintiff's requests for information and documents regarding the origination and validity of the Second Loan and his applications for mortgage assistance, and his challenge to SPS' initiation of foreclosure proceedings

do not concern "servicing" errors and, thus, did not impose on SPS a statutory duty to respond under Section 2605(e).  *See Medrano*, 704 F.3d at 667 (holding "challenges to the terms of the loan and mortgage documents" and "request[s] for modification of a loan agreement" do not concern servicing of a loan).  Plaintiff, thus, fails to state a valid RESPA claim.

SPS additionally moves for summary judgment on Plaintiff's RESPA claim on the ground that Plaintiff is unable to establish actual damages from SPS' alleged noncompliance.  SPS MSJ at 17.  RESPA creates a private cause of action only for borrowers who can demonstrate actual damages resulting from a servicer's noncompliance.  12 U.S.C. § 2605(f)(1).  According to SPS, Plaintiff cannot establish he suffered actual damages based on any alleged RESPA violations by SPS since the Second Loan has been in default since 2012.  SPS MSJ at 17.  Plaintiff responds he incurred damages relating to late fees and foreclosure fees that were added to the Second Loan while Plaintiff was attempting to ascertain whether the loan existed, and while waiting for SPS to investigate and adequately respond to his requests.  Opp'n to SPS MSJ at 20–21.  The court agrees with SPS.

Any interest and foreclosure fees that accrued while Plaintiff was challenging the validity of the Second Loan were the direct result of Plaintiff's default of the loan in 2012, and not causally related to any conduct by SPS in connection with the servicing of the Second Loan.  *See* 12 U.S.C. § 2605(i)(3); *Medrano*, 704 F.3d at 667.  Plaintiff's first cause of action, thus, fails on this additional basis.

Accordingly, the court GRANTS summary judgment in SPS' favor on the first cause of action for violation of RESPA.

## C.     Third Cause of Action for Negligent Misrepresentation

"The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'"  *Nat. Union Fire Ins.*

1    *Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp.*, 171 Cal. App. 4th 35, 50

2    (2009).  "Predictions as to future events, or statements as to future action by some

3    third party, are deemed opinions, and not actionable fraud."  *Tarmann v. State Farm*

4    *Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (brackets and quotation marks

5    omitted).

6         The FAC alleges SPS: (1) "misrepresented that Plaintiff was in default on his

7    account due to a debt that had purportedly been validated, and that foreclosure action

8    could be taken against Plaintiff's home if he did not make the payments demanded by

9    SPS," and (2) "repeatedly, orally and in writing, represented to Plaintiff that his

10   numerous inquiries seeking documentation to validate the purported debt and well and

11   [sic] information regarding the status of the purported loan would be meaningfully

12   responded to and any issues that were identified would be addressed."  FAC ¶¶ 114,

13   116.

14        As stated, Plaintiff lacks evidence sufficient to establish the Second Loan was

15   forgiven, modified, or extinguished.  The first representation pleaded, thus, cannot

16   support a negligent misrepresentation claim as it constituted a true statement of a past

17   or existing fact.  *See Nat. Union*, 171 Cal. App. 4th at 50.  The court, therefore, grants

18   summary judgment in SPS' favor with respect to this portion of Plaintiff's third cause

19   of action.

20        Turning to Plaintiff's allegations regarding SPS' responses to his inquiries, SPS

21   contends the representations pleaded are non-actionable predictions of future events,

22   rather than actionable statements of past or existing material facts.  SPS MSJ at 26.

23   Plaintiff responds that SPS "misrepresented to him that it was investigating his

24   complaints, all of the while it was not doing so and was, instead, taking steps to

25   foreclose on Plaintiff," and that "[t]his [was] a misrepresentation about a present

26   existing fact."  Opp'n to SPS MSJ at 24.  The court disagrees with Plaintiff.

27        The FAC does not plead that SPS represented it would not initiate foreclosure

28   proceedings on the Property pending completion of an investigation into the validity

17

of the Second Loan.  *See* FAC ¶¶ 20–83.  Plaintiff, likewise, does not present any evidence to establish SPS made any such representations.  *See* Pl. SGDF ¶¶ 54–62.[8]  Plaintiff pleads only that SPS acknowledged his concerns, and "represented to Plaintiff that his numerous inquiries seeking documentation to validate the purported debt [as well as] information regarding the status of the purported loan would be meaningfully responded to and any issues that were identified would be addressed."  FAC ¶ 114; *see also id.* ¶¶ 25–83 (detailing Plaintiff's correspondence with SPS).

SPS' alleged representation that it would review and "meaningfully respond[]" to Plaintiff's concerns constitute non-actionable predictions of future events—not actionable misrepresentations of present fact.  *See Tarmann*, 2 Cal. App. 4th at 158.  While Plaintiff may have believed SPS would not initiate foreclosure proceedings on the Property while it was investigating Plaintiff's claims, absent evidence of a specific statement by SPS to that effect, Plaintiff's subjective belief is insufficient to support a negligent misrepresentation claim.

For the sake of completeness, the court will address the parties' arguments regarding justifiable reliance and damages.  "Actual reliance occurs when a misrepresentation is an immediate cause of a plaintiff's conduct, which alters his legal relations, and when, absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction."  *Engalla v. Permanent Med. Grp., Inc.*, 15 Cal. 4th 951, 976 (1997).

SPS argues Plaintiff's negligent misrepresentation claim fails because Plaintiff cannot show he justifiably relied on any representation by SPS or suffered any damages based on such reliance.  SPS MSJ at 27.  SPS notes that Plaintiff testified at

---

[8] At his deposition, Plaintiff testified he told SPS it could not foreclose the Property until SPS provided the documentation he requested.  Dkt. 66-2 (Betpera Decl. Ex. G-2) at 92.  Plaintiff, however, does not present any evidence SPS agreed to comply with his demand or told Plaintiff it would not initiate foreclosure proceedings until he was satisfied the Second Loan was valid.  Plaintiff's demand to SPS is not sufficient to demonstrate that *SPS* made misrepresentations to *Plaintiff*.

deposition that the only actions he took in reliance of the alleged misrepresentations was that he "believed" the representations.  SPS MSJ at 27; SPS SUF ¶ 59; *see also* Dkt. 66-2 (Betpera Decl. Ex. G-2) at 94 ("Q. But I want to talk about any actions you took in reliance on misrepresentations made by SPS.  Putting aside what we just talked about in terms of believing their statements.  … [D]id you take any other concrete actions in reliance on SPS?  Like, for example, … I stopped making my loan payments.  I turned down … a loan that I had been approved for.  Is there anything of that nature you did in direct reliance on anything SPS ever told you?  A. As I sit here today, I can't think of anything.").

Plaintiff responds that he "testified at length about the emotional damage his reliance caused to him and the fact that he delayed getting an attorney based on Defendant's representations (and now faces statute of limitations arguments as a result)."  Opp'n to SPS MSJ at 24.  Plaintiff further argues he can establish reliance because he "is on the line to owe … interest that was accruing unbeknownst to him, while there was no communication on the loan and while plaintiff thought the loan was extinguished."  *Id.*

Plaintiff fails to make a showing sufficient to establish the justifiable reliance and damages that are needed for his claim.  *Celotex*, 477 U.S. at 322.  Plaintiff's stated belief in SPS' representation that it would "meaningfully respond[]" to his inquiries and address any issues identified is insufficient to establish a change in Plaintiff's legal position or relations sufficient to support a negligent misrepresentation claim. *See Engalla*, 15 Cal. 4th at 976.  It is undisputed the Second Loan had been in default since 2012, SPS SUF ¶ 16, and that Plaintiff disputed the validity of the loan as of April 25, 2017, Dkt. 66-5 (Betpera Decl. Ex. 6) at 8.  Plaintiff's failure to make payments on the Second Loan based on his belief in SPS' representations did not constitute a change in his legal position because he had already been refusing to make payments for years before any representations by SPS.  If anything, Plaintiff did not change his legal position (which would have involved making payments on the

Second Loan) because he did not believe SPS' statements regarding the validity of the loan and demanded to be convinced otherwise.

Plaintiff, similarly, fails to demonstrate he suffered any harm based on his purported belief in SPS' statements.  While Plaintiff argues he delayed in obtaining an attorney based on SPS' representations, Plaintiff does not identify any actionable harm he suffered based on this delay.  *See* Opp'n to SPS MSJ at 24.  Plaintiff's argument that he "now faces statute of limitations arguments as a result" of his delay is irrelevant, as the court has not dismissed or granted summary judgment in Defendants' favor on any claim based on the statute of limitations.

Finally, Plaintiff's deposition testimony makes clear that any emotional damages he suffered stem from SPS' attempts to collect on the Second Loan and foreclose the Property—not his stated belief in SPS' alleged representations that it would meaningfully investigate and address his concerns regarding the validity of the Second Loan.  *See* Dkt. 66-2 (Betpera Decl. Ex. G-2) at 93–94 ("It damaged my wellbeing and my level of stress and anxiety and what I went through.  Because again, I don't know if you've ever been in a situation like that.  This is my home. … So I have no place else to go.  So when your home is on the line of 23 years … [a]nd then, you know, every other month they're putting my home for auction.  That's …  More than emotional.  It's emotional, physical.  Everything combined.").

In sum, Plaintiff fails to make a showing sufficient to establish the misrepresentation, reliance, or damages elements of his negligent misrepresentation claim against SPS.  The court, therefore, GRANTS summary judgment in SPS' favor on the third cause of action.

### D.     Fourth Cause of Action for Violation of the UCL

Plaintiff's fourth cause of action relies on and is dependent upon his FDCPA and negligent misrepresentation claims.  FAC ¶¶ 121–23 (stating RESPA and FDCPA violations and negligent misrepresentations pleaded constitute unfair business practices in violation of the UCL); Opp'n at 13 ("Plaintiff's UCL claim is tethered to

Defendant's violations of Federal law as set forth in the FAC.").  Having granted summary judgment in SPS' favor with respect to the underlying claims, the court also GRANTS summary judgment in SPS' favor on the fourth cause of action for violation of the UCL.

**III.   Conclusion**

In sum, the court GRANTS SPS' Motion for Summary Judgment and summary judgment in SPS' favor on all of Plaintiff's claims.  Having granted SPS' motion for the reasons stated, the court need not address the parties' remaining arguments.

## PLAINTIFF'S REQUEST FOR LEAVE TO AMEND AGAINST BANA

On July 19, 2023, the court granted BANA's Motion to Dismiss (Dkt. 15) with Plaintiff's request for leave to amend his negligent misrepresentation and UCL claims against BANA to be discussed at the July 21, 2023 hearing.  Dkt. 85 at 2, 7.

At the hearing, Plaintiff argued the court should grant him leave to amend based on Ms. Graham's alleged representation that the Second Loan was forgiven or extinguished by the Consent Judgment.  According to Plaintiff, he did not seek a loan modification or refinance the loan at a favorable interest rate, in reliance of BANA's representation.

As stated, Plaintiff's contention that he could have obtained a loan modification or refinanced the Second Loan on more favorable terms is speculative and not supported by the evidence in the record—especially since Plaintiff does not present any evidence he sought or applied for either during the four years the Second Loan was in default before the alleged representation or after he learned BANA was attempting to collect on the loan, around the time he sent the April 25, 2017 letter.  Furthermore, Plaintiff does not explain why he did not assert this claim previously, despite knowing by April 25, 2017, at the latest, that BANA believed the Second Loan remained valid and enforceable, or why this claim would not be barred by the applicable 3-year statute of limitations for claims based on fraud or mistake.  *See* Cal. Code Civ. Proc. § 338.

The court, therefore, DENIES Plaintiff's request for leave to amend his negligent misrepresentation and UCL claims against BANA.

### **CONCLUSION**

For the aforementioned reasons, the court GRANTS SPS' Motion for Summary Judgment (Dkt. 66) in its entirety and DENIES Plaintiff leave to amend his claims against BANA (Dkts. 15, 85).  SPS' evidentiary objections (Dkt. 79-1) are OVERRULED as moot.  BANA's Motion for Summary Judgment (Dkt. 63) and SPS' Motion to Dismiss (Dkt. 16) are DENIED without prejudice as moot.  The court's order to show cause (Dkt. 50) is DISCHARGED.  Defendants shall file a proposed Judgment within seven (7) days of this Order.

IT IS SO ORDERED.


Dated: September 27, 2023

FERNANDO L. AENLLE-ROCHA
United States District Judge